Good morning, Your Honors. May it please the Court, Counsel. Alison Moyer on behalf of the petitioner, Mr. Daniel Susanto. Your Honors, Mr. Susanto is a 39-year-old ethnic Chinese Christian homosexual man from Semarang, Indonesia. From the time he was a child, Mr. Susanto suffered harm on account of his ethnicity and his religion. All his adult life, Mr. Susanto had to hide his homosexuality, and out of fear that if he lived openly as a gay man, he would suffer further persecution. Counsel, let me just ask you one question at the outset to try to frame the issue. As I read your supplemental brief, the only issue in this case is whether we should remand because the Board applied an improper standard. That is the primary issue of the case, Your Honor. And we're not going to reach the question of whether the Board was incorrect in saying that he was a victim of persecution, was not a victim of persecution. But what you would like us to do is to remand so that they could apply the intermediate standard. That is correct, Your Honor. The primary issue is whether or not the Court should either decide in the first instance or remand this case because the Board and the immigration judge failed to properly engage in the Court's disfavored group analysis. So you're asking us to decide in the first instance. Well, Your Honor, my understanding of the Court's precedence is that when the agency passes over an issue, has an opportunity to decide the issue, then the Court is not required under Ventura to remand and can decide the case in the first instance. But that's what the result is clear. Pardon? What if the result is clear? I'm not sure I understand your question. Do we still have to remand, Judge Ferguson, if the result is clear either way? No, the Court does not have to remand if the result is clear. That's not the release you asked for in your supplemental brief. You said we should remand. Well, remand would be appropriate, Your Honor. Well, it's one or the other. I mean, either you asked in your brief and you still contend that the right release is to remand or you're changing the release you asked for in your brief. Well, we would – We're tossing you some soft balls. I mean, I know you'd be happy if we said that your client wins and can stay. Would you be just as happy if we said we apply the standard and he loses? No, Your Honor, we would not be just as happy. So then the question is, if they didn't apply the right standard, isn't the appropriate relief to remand and let them make the initial decision? Yes, under the Court's decision of Ornelas Chavez, the Court explained that when the board or the agency fails to apply the correct legal standard, the correct relief is to remand for the application. So then why don't you address your argument to whether they applied an incorrect legal standard? I will, Your Honor.  The immigration judge erred as a matter of law when he failed to engage in the Court's disfavored group analysis when he denied Mr. Sesanto's application for asylum and withholding of removal. In COTAS, in 1994, the Court explained that an applicant can show a well-founded fear of future persecution both based on their individualized risk or by membership in a mistreated group. If a group suffers persecution that is systematic and if there is a pattern or practice of persecution of a group, then the applicant need not show any individualized risk. On the other end of the spectrum, if a group is, or in the middle of the spectrum, if a group is a disfavored group but the persecution is not necessarily systematic, then the applicant can show a lower level of risk. In SAIEL, this Court applied the disfavored group analysis to a similar case. There the applicant was an ethnic Chinese Christian Indonesian woman. The Court found that the risk of harm, that Ms. SAIEL had shown her risk of harm through past acts of violence and harm and didn't need to show a high level of individualized risk because ethnic Chinese Christian Indonesians are a disfavored group in Indonesia. The Court also explained that when a disfavored group's disfavored status is rooted in centuries of persecution, year-to-year fluctuations cannot reasonably be viewed as disposing of an applicant's claim. Just as in SAIEL, Mr. Susanto has established that he is a member of a significantly disfavored group, ethnic Chinese Christian Indonesians, and that he has an individualized risk of harm based on the harm that he suffered in the past in Indonesia, as well as his inclusion in elements of the group that are at a higher risk of persecution, his homosexuality, and that he was a church leader. Just as in SAIEL, Mr. Susanto suffered multiple instances of threats and harm. Before he was even born, Mr. Susanto, his grandfather, was murdered by a mob of pogroms that were happening during those years of Islamic fundamentalists against the ethnic Chinese. As a child, Mr. Susanto was continuously harassed by neighbor children who called him chink or sissy. I'm not sure what that has to do with whether the board applied the wrong standard. Whatever happened to him, is it or is it not already established that this is a disfavored group? It is. SAIEL clearly holds that ethnic Chinese Christians are- So that unless SAIEL has been overruled, then the question is, was that standard applied? Correct. SAIEL is still good law, and the standard was not applied in this case. The immigration judge merely looked at whether or not he felt the harm Mr. Susanto suffered rose to the level of past persecution, and he looked at whether or not ethnic Chinese Christian Indonesians can constitute-whether or not there's a pattern or practice of persecution against them. He never engaged in the- Intermediate level. Exactly, in the intermediate level. Do you want to save the rest of your time for rebuttal? I will. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Kose Igamori, and I represent the United States Attorney General in this case. This petition for review should be denied because the board probably concluded that petitioner is ineligible for asylum. The primary issue in this case, as Your Honors has noted, is whether the case should be remanded or not remanded in this case. And the case should not be remanded for application of the disfavored group analysis, first because there is no merit to petitioner's disfavored group argument, and second because she never raised the issue before the board, and thus the issue was never exhausted, Your Honors. Where did you assert that position, that it was not exhausted? Well, Your Honors, the original issue before this Court was the merits to petitioner's asylum application. And it was petitioner's understanding that this Court should deny that petition because all reasonable adjudicators would not be compelled to conclude to the contrary to the factual findings of the board. But as became elucidated in this discussion with counsel, the issue of whether the case should be remanded for an application of a legal standard is not properly before the board, Your Honors. Petitioner never argued in her motion to reopen that the disfavored group should be applied. The proper procedure for doing so was to file a motion to reconsider for an error of law for the board or whatever. And that would be appealed to this Court, Your Honors. The board never had an opportunity to address whether the issue should be, whether the motion. I thought that the petitioner always said before the IJ and the board that he was a member of a particularly vulnerable group. Yes, Your Honor. But he only asserted a pattern or practice claim, Your Honors. His motion to reopen specifically notes various acts of violence and injuries upon ethnic Chinese Christians and homosexuals. However, he does not state that it is because he is in a disfavored group that he qualifies. He merely reiterates his prior claim of a pattern or practice of persecution and an individualized fear of persecution. As my opposing counsel stated, the decision in INS v. KOTAS was decided in 1994, and thus Petitioner was aware of the disfavored group analysis many years before this case arose, Your Honors. And that issue was never raised before the immigration judge or the Board of Immigration Well, it's kind of an obvious issue, isn't it? No, Your Honor, because the disfavored group is not applicable in this case. Petitioner has made no argument to the Board that the disfavored group should be applied and is not applicable in this case, Your Honor, because What do you mean it's not applicable? We have cases, don't we, that say that this particular group is a disfavored  Didn't Sayle say that? Yes, Your Honor. In Sayle, it was found that an ethnic Chinese woman, Christian woman, was a disfavored group. Petitioner is not an ethnic Chinese woman. Furthermore, in Lolong v. Gonzales You think that Sayle is limited to women? It should be limited to its facts, Your Honors, because in Lolong v. Gonzales, this Court did not apply a disfavored group analysis. And yet that case involved an ethnic Chinese Indian woman. So you think if it had been a woman, they would have applied it in Lolong? No, Your Honors. Because Lolong specifically stated that in that case, that Petitioner, that the alien in that case did not raise an individualized fear of persecution, and it only alleged a pattern or practice. So all they decided was a pattern and practice issue. Yes, Your Honor. But it did note that the disfavored, that there was no individualized persecution. Yes. And further demonstrated that the disfavored group was inapplicable under those circumstances. No, that's correct. It's what you need in a disfavored group is less of an individualized persecution than you would in an ordinary case. Yes, Your Honor. That is the legal principle. However, before that, Your Honor, as an initial, as a matter of precedent to that, is whether the disfavored group applies at all. And as in Lolong, this Court stated that the disfavored, or it did not state, but it demonstrated that the disfavored group was inapplicable to a case where there was no individualized fear of persecution. And that's precisely what is present in this case, Your Honors. Petitioner has alleged no individualized fear of injury or persecution. Well, he thinks he did. The Petitioner says he did. The Board said that he didn't. But that's under a higher standard of what's individualized persecution than you would have with a disfavored group. No, Your Honors. Petitioner failed to allege any injury on account of a protected ground. He fears reprisal from his ex-father-in-law because he deceived his daughter. That's not an individualized persecution. That should be factored into. Well, that's only one thing. He also talked about a mob attacking Chinese Christians or Chinese Indonesians. Yes, Your Honor. He talked about his grandfather being killed. It may not be a very strong case, but those are factors involving what he alleged to be individualized persecution. Respectfully, those wouldn't be factors, Your Honor, because persecution must be directed at the applicant. And certainly it's unfortunate that Petitioner's grandfather was killed in 1947, as well as his father was spat on by his sister's ex-boyfriend, as well as the ---- Didn't he talk about being persecuted from the time he was a youngster? He was taunted, Your Honors. He was taunted and culted. Well, what is that, you know, being persecuted? No, Your Honors. Under this Court's precedent, persecution is an extreme concept. That does not ---- Well, that's pretty extreme when you get a young boy and he gets taunted. You know, he goes through life that way. Well, no, Your Honors. This Court in the Google versus ---- Then you have a situation here where you have an immigration judge that just went after him and, you know, abused him and lectured to him, and you get the sense that he didn't receive a fair trial here at all. And this is my way of looking at it. I don't think he got a fair hearing at all. Respectfully, no, Your Honor. Petitioner did receive a fair hearing in this case. She had an opportunity to present her case. She had an opportunity to cross-examine, to give her own testimony in support of, I'm sorry, of his application for relief. And the immigration judge did not violate petitioner's due process rights or otherwise render the proceedings fundamentally unfair. The immigration judge weighed the evidence, made an inference from the evidence, which is precisely what the immigration judge is ---- Well, no, there was no reason for him to put moral blame on the individual for why he tried to become straight by marrying somebody and to castigate him for that. The question is whether that kind of treatment of the individual and moral judgment by the immigration judge shows that he was not a fair judge. Respectfully, Your Honors, the immigration judge did note that it would not affect his decision in determining ---- Yeah, I know. That's a fiction. But, yes, Your Honors, perhaps, but that is what's ---- One of the first things I learned in law school was there are all these fictions, you know, and they keep growing and growing. Yes, Your Honors, but that is what's in the record, Your Honors, and this Court reviews the administrative record in determining the validity of the Board's decision. What is primarily at issue in this case is whether this Court should uphold the Board's decision, and the Board did not err in this case, Your Honors, in denying the motion to reopen or in dismissing petitioner's appeal. That is truly what is at issue in this case. The factual findings of the immigration judge do not compel a contrary conclusion in this case, Your Honors. Petitioner was never injured. He fears reprisal from his father-in-law, but he has never asked for any help by police. He has never alleged that the police ignored him. In his asylum application, he alleges that his church was burned, and the police did nothing about it, but he did not testify to that fact, Your Honors. Your Honors, there are six instances of persecution in this case that petitioner alleges rise to the level of the extreme concept that is persecution. Three of those instances were not even directed at petitioner. And then furthermore, the ---- But, you know, if we were to remand to apply the proper test, that would all be irrelevant because that would then be the Board's duty to do once they applied the right standard. Yes, Your Honors. But the government's position is that the disfavored group analysis does not apply in this case because petitioner only alleges at essence, at essence of its primary argument, really, is pattern or practice. If Your Honors would be directed to petitioner's opening brief, the main argument that she makes, he makes, is that there is a pattern or practice of persecution. Sometimes you don't win the main argument, and then you move on to the next one. Certainly, that's true, Your Honors. However, petitioner's primary position was pattern or practice, Your Honors. There's hardly any argument on individualized persecution. There's a section on disfavored group, but no analysis as to why she should ---- he, I apologize, Your Honors, why he should be eligible for asylum because of disfavored group, Your Honors. Thank you, counsel. Thank you. Did you represent this petitioner before the immigration judge? Your Honor, the partner at my firm, Mr. Phillips Smith, represented Mr. Susanto before the immigration judge. Your Honors. What's your response to the counsel's argument that you didn't raise the intermediate level of scrutiny before the BIA? Certainly, Your Honor. In Mr. Susanto's briefs to the BIA, he alleged that he suffered, well, that ethnic Chinese-Indonesian Christians are a group that suffers a pattern or practice of persecution. He also alleged the, or argued the individualized risk that he himself suffered, the events of harm that he suffered, and the cumulative effect of his membership in three vulnerable groups. His ethnicity, his religion, and his homosexuality. Although maybe, perhaps, the language was not used, disfavored group, the argument was still present in the brief. And, in fact, at the time Mr. Susanto briefed his appeal to the board, SIL had not been published at that time. Furthermore, Your Honors, Lolong is quite distinguishable from Mr. Susanto's case. There, Ms. Lolong only alleged a pattern or practice of persecution against ethnic Chinese-Christian-Indonesian women. Ms. Lolong first came to the United States in 1990 as a student, and had been living here as a student until 1998 when the most recent pogroms happened. Her application for asylum was- The most recent. What happened? The pogroms against the ethnic Chinese-Christians. Pogroms. Pogroms, excuse me. Her arguments for a well-founded fear of future persecution were based on the experiences of harm of her family and her friends, not on her own individual experiences in Indonesia. Further, in that case, the court affirmed the Board of Immigration Appeals' decision because the Board had found that Ms. Lolong had not shown that the government in Indonesia was unable or unwilling to control the forces who were persecuting the ethnic Chinese-Christians. Here, the immigration judge never made such a finding. In sum, Your Honors, asylum cases are matters of life and death, and it's of the utmost importance that the agency correctly apply the well-founded fear of future persecution analysis when deciding applicants' applications for asylum and withholding of removal. Okay. Thank you very much. This matter will stand submitted. The next matter, Kevin Boardman v. Michael Astru, that's submitted. Now we come to U.S. v. Arturo Hernandez Torres.
judges: Pregerson, Reinhardt, Marshall